IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**GALVIN DWAYNE DAVIS**                                                                 **MOVANT**

**V.**                                                                                        **NO. 3:21CR63-MPM-RP**

**UNITED STATES OF AMERICA**                                                     **RESPONDENT**

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the *pro se* motion of Galvin Dwayne Davis to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Government has responded to the motion, to which Mr. Davis filed a reply. The Court held an evidentiary hearing on Mr. Davis' claim that his counsel was ineffective in failing to file a notice of appeal on his behalf. Having considered the pleadings and the record, the testimony elicited from the hearing, along with the applicable authority, the Court finds that Mr. Davis' claims are without merit and his § 2255 will be denied.

### Background Facts and Procedural History

On June 24, 2021, a federal grand jury in the Northern District of Mississippi indicted Galvin Dwayne Davis[1] on seven counts, with all charges relating to a conspiracy to unlawfully take firearms from various pawn shops and sell or otherwise distribute them; possession of stolen firearms; and possession of a firearm by a convicted felon. Doc. # 1. On August 25, 2022, during a Change of Plea Hearing, Davis pleaded guilty to the following three charges:

> Count Three—On or about August 1, 2019, the defendant GALVIN DWAYNE DAVIS, aided and abetted by others known and unknown to the Grand Jury, did knowingly steal and unlawfully take and carry away from TNT Pawn in Booneville, Mississippi, a business which was federally licensed to engage in the business of dealing in firearms, forty-nine firearms in the licensee's business inventory which had previously traveled in interstate commerce in violation of Title 18, United States Code, Sections 922(u) and 924(i)…

---

[1] Mr. Davis' co-defendant, Marquis Devon McCray, was indicted as well; but McCray is not the subject of the instant motion.

> Count Seven— On or about August 1, 2019, in the Northern District of Mississippi, GALVIN DWAYNE DAVIS, aided and abetted by others known and unknown to the Grand Jury, knowing he had been previously convicted of crimes punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce one or more of the forty-nine firearms from the TNT Pawn business inventory in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2)…
>
> Count Nine—From on or about August 1, 2019, to a date unknown to the Grand Jury, in the Northern District of Mississippi, the defendant GALVIN DWAYNE DAVIS, aided and abetted by others known and unknown to the Grand Jury, did knowingly possess, receive, conceal, store, barter, sell, and dispose of one or more stolen firearms, which had previously traveled in interstate commerce, in violation of Title 18, United States Code, Sections 922(j) and 924(a)(2)…

Doc. # 55. In the Plea Agreement, entered into between Mr. Davis and the Government, Mr. Davis submitted that "[t]he defendant is pleading guilty because the defendant is in fact guilty." *Id.* at 3.

Mr. Davis appeared with counsel for sentencing on February 2, 2023. *See* Doc. # 82. Following the hearing, a Judgment was entered which sentenced Mr. Davis to a total term of 168 months, broken down as follows: 60 months on Count 3; 60 months on Count 7; and 48 months on Count 9; with all counts to be served consecutively to each other. Doc. # 85 at 2. The term of imprisonment was to be followed by a three-year term of post-release supervision on each count, with each count to run concurrently. *Id.* at 3.

On February 5, 2024, Mr. Davis timely filed his first *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[2] Doc. # 94. In that motion, Mr. Davis contends that counsel was ineffective for failing both to file a notice of appeal and pursue a suppression of evidence hearing, and further argues that his guilty plea was "not knowingly, voluntarily, and intelligently" entered. *Id.* at 3-6. The Government filed a response in opposition on March 27, 2024. Doc. # 102. On April 2, 2024, the Court received another motion which was docketed as

---

[2] Mr. Davis signed the motion on February 5, 2024, but it was not received and filed on the Court's docket until February 20, 2024.

an amended motion to vacate.³ Doc. # 103. In the second submission, Mr. Davis appears to raise essentially the same grounds for relief with the exception of a new argument regarding the imposition of consecutive sentences as opposed to concurrent ones. *See id.* at 5. The Government filed its response to the amended motion on May 30, 2024. Doc. # 106. After having been granted leave to do so, Mr. Davis filed a rebuttal in support of his motion(s) on June 21, 2024. Doc. # 109. On December 12, 2024, the Court held an evidentiary hearing to address the claim that trial counsel was ineffective in failing to file a notice of appeal on Mr. Davis' behalf. *See* Doc. #s 116, 117.

## **Standard of Review**

After a defendant has been convicted and exhausted or waived any right to appeal, "a court is entitled to presume that [he] stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). A motion brought pursuant to § 2255 is a "means of collateral attack on a federal sentence." *Cox v. Warden, Federal Detention Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990) (citation omitted). There are four separate grounds upon which a federal prisoner may move to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255: (1) the judgment was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the judgment; (3) the sentence exceeds the statutory maximum sentence; or (4) the judgment or sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A collateral attack limits a movant's allegations to those of constitutional or jurisdictional magnitude. *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (citation omitted). Accordingly, relief under § 2255 is reserved for violations of "constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).

---

³ That motion was also signed by Mr. Davis on February 5, 2024, but for some reason was not received by the Court until April 2, 2024.

3

**Ineffective Assistance of Counsel**

Claims for ineffective assistance of counsel are governed by the two-prong test set forth in *Strickland*, which requires the movant to demonstrate: (1) constitutionally deficient performance by counsel, and (2) actual prejudice as a result of such ineffective assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A movant's failure to prove *either* deficient performance by counsel *or* actual prejudice as a result of counsel's actions or omissions defeats a claim of ineffective assistance. *See Strickland*, 466 U.S. at 697; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

The "deficiency" prong requires a showing that counsel's performance fell below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687-88. Under the "prejudice" prong, the petitioner must demonstrate, to a reasonable probability, that œe result of the proceedings would have been different but for the alleged conduct, or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995); *see also Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* 562 U.S. 86, 112 (2011).

Absent an affirmative showing of prejudice, there is no merit to a claim of ineffective assistance of counsel. *See, e.g., Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced [the defendant's] right to a fair trial," there is no merit to an ineffective assistance of counsel claim). Consequently, conclusory allegations fail to state an ineffective assistance claim. *See, e.g., Miller*, 200 F.3d at 282 ("Conclusory allegations of

ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.")

Mr. Davis argues that trial counsel was ineffective for seemingly three reasons: (1) failing to file a notice of appeal; (2) failing to file a motion to suppress; and (3) failing to object to consecutive sentences.

### *Failure to File a Notice of Appeal*

In his first assignment of error, Mr. Davis contends that defense counsel failed to file a notice of appeal on his behalf. According to his petition, he asked his attorney whether he could appeal his sentence and she advised him that "there was nothing to appeal." Mr. Davis alleges that he relied on his attorney in choosing not to pursue an appeal himself. He now seeks to file an out-of-time appeal.

In its response, the Government conceded "that there is a dispute as to whether Davis requested that his counsel file an appeal after his conviction." *See* Doc. # 102 at 3. Attached to the Government's response is an affidavit of Victoria Washington, Mr. Davis' court-appointed counsel in the underlying proceedings, in which she disputes that he ever requested that she file a notice of appeal and further avers that she advised him of the option of collaterally attacking his sentence under Section 2255. Doc. # 102-1.

As the § 2255 motion and attached affidavit are competent evidence that the Court may consider, *see* 28 U.S.C. § 1746; *Hart v. Hairston*, 343 F.3d 762, 764 n.1 (5th Cir. 2003); *United States v. Alvarez*, 172 F. App'x 587, 589 (5th Cir. 2006), the Court found that there was a contested issue of fact *as to this claim* and that an evidentiary hearing was required to resolve it. *See Brown v. Johnson*, 224 F.3d 461, 466-67 (5th Cir. 2000); *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B 1981).

5

Consequently, the Court appointed counsel Goodloe Lewis to represent Mr. Davis and held an evidentiary hearing on the matter on December 12, 2024. At the hearing, Mr. Davis first explained that he and Ms. Washington had discussed two options: a direct appeal and a § 2255 motion. Doc. # 119 at 4-5. He ultimately decided to pursue relief under § 2255, rather than filing a notice of appeal. *Id.* at 5. Mr. Davis then testified on direct examination as follows:

> MR. LEWIS: And so I understand your testimony correctly that basically you understood that you had two options following your sentencing, which was to file a direct appeal to the Fifth Circuit or to file a 2255 motion? Is that correct?
>
> MR. DAVIS: Yeah. Well, at the time, it seemed like it was, like, one and the same. It wasn't two different - - they hold two different merits.
>
> MR. LEWIS: And so - - and what decision did you make?
>
> MR. DAVIS: I - - when - - when I heard about a 2255 and she said what she said, I said, "I'll go with the 2255." I didn't understand that the 2255 didn't hold the same merit as the - - as the motion on direct appeal. I thought they did, but they didn't.

*Id.* at 5-6. Assistant United States Attorney Parker King then cross-examined Mr. Davis. *Id.* at 6-7. He again confirmed that he and Ms. Washington discussed the two options of direct appeal or § 2255 motion. *Id.* at 6. Mr. Davis explained that after this first meeting with Ms. Washington, he spent some time thinking about his two options, and when Ms. Washington followed-up to see what he wanted to do, he decided to pursue relief under § 2255. *Id.* at 6-7. In fact, he testified as follows:

> MS. KING: And so, when she left that meeting with you - - [] what was your understanding of what she was going to do?
>
> MR. DAVIS: What she - - what she said in - - in my 2255, what she didn't do or what she did as a - - as a lawyer.
>
> MS. KING: Okay. You didn't think she was filing an appeal on your behalf after that meeting; correct?
>
> MR. DAVIS: No.

6

*Id.* at 7-8. Ms. Washington then testified. *Id.* at 9-14. She first explained that she and Mr. Davis had several conversations via ZOOM and the telephone regarding what action(s) he wanted to take post-sentencing. *Id.* at 9-10. Ms. Washington then visited Mr. Davis to further discuss his options, and she explained that conversation as follows:

> I asked him - - so it wasn't that Galvin was asking me to appeal. I was asking him whether or not he wanted an appeal because the clock was ticking. And so he told me he'll get back with me. . . .
>
> And from what I recall from seeing him face-to-face at the jail was, first, he brought up a motion to suppress. And that was the first time I heard about a motion to suppress. And so from there, he asked me what options did he have. And I gave him two.
>
> I said, "You have two options. You could do a direct appeal. You pled guilty. Now" - - and I explained the rights that he has if he pleads guilty and what the higher court will look at. I said, "They will look at the sentencing to determine whether or not the sentencing judge was within the guideline range." I said, "You were sentenced to the lower end of the guideline range."
>
> I said, "And then you have a 2255 option." I said, "Those are two options. One is direct appeal from your sentencing to determine whether or not it was fair or if the - - you know, the - - judge calculated your guidelines correctly. That's what the Court will consider."
>
> And then I gave him a second option. If he did not do the direct appeal, then he had a 2255. And I explained that in detail, what a 2255 was. And I asked him, "What - - what would you like to do?" He said, "What do you think?"
>
> I said, "Well, Judge Mills sentenced you at the lower end of the guideline range. Usually the court is there to determine whether or not - - if he varied upward, if - - you know, if - - if that was fair or not." I said, "Other than that, " I said, "I don't see anything. But it's your decision." I said, "It's your decision what you want to do." He said, "Well, I'll think about it."
>
> We called Galvin to determine whether or not he wanted an appeal. When I left, it wasn't - - it wasn't my convincing him that - - to not appeal. We were trying to decide which - - did he want an appeal.
>
> And by the time we talked to him, he said, "Well, naw. I'll just - - I'll just do the 2255. I said, "Are you sure?" I said, "A 2255 is just, you know, discussing ineffective, you know, assistance of counsel." I went through that and what a

7

collateral attack of a sentence was, and I explained all of that to him. He said, "A 2255." And that was our conversation.

*Id.* at 10-11. The following exchange then occurred:

MS. KING: Did Mr. Davis ever ask you explicitly to appeal - - to make a direct appeal on his behalf?

MS. WASHINGTON: Never. He did not. And I asked him - - I asked him. And if he wanted one, I would have filed it and drafted it for him.

*Id.* at 12. On cross-examination, Ms. Washington further expounded that, in her last conversation with Mr. Davis, he called her office and said, "I'm just going to do the 2255." *Id.* at 13. Ms. Washington averred that she asked him if he was "sure" to which he responded "yes." *Id.*

While the Court is sympathetic to the circumstances in which Mr. Davis finds himself, the Court is also familiar with Ms. Washington and her representation of clients in this district has consistently been of a high caliber. Thus, the Court believes Ms. Washington in that she would have filed a notice of appeal had Mr. Davis so asked. Moreover, the testimony given by both Mr. Davis and Ms. Washington makes it clear that Mr. Davis did not advise Ms. Washington to file a notice of appeal on his behalf. Mr. Davis was aware of two post-sentencing options, gave it some thought, and ultimately decided to file the instant § 2255 motion rather than pursuing direct appeal. Mr. Davis made the decision to forego a direct appeal. Thus, Mr. Davis' claim that counsel was ineffective in failing to file a notice of appeal is meritless.

### *Failure to File a Motion to Suppress*

Mr. Davis additionally argues that defense counsel was ineffective in "failing to pursue a suppression of evidence hearing."

An attorney's failure to file a suppression motion does not constitute per se ineffective assistance of counsel. *See Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Rather, a finding

8

of ineffectiveness "depends on whether either a suppression motion or an objection would have been granted or sustained had it been made. *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987).

Mr. Davis does not identify any specific evidence that should have been suppressed.[4] Instead, he vaguely argues that counsel "could have pursued arguments to remove any evidence that *may* have been illegally obtained or to exclu[de] certain e[vi]dence being presented at Def[end]ant's trial before allowing Defendant to enter into guilty plea . . . ." Doc. 103 at 5. (Emphasis added). In Ms. Washington's affidavit, however, she does note that Mr. Davis asked her about the possibility of suppressing digital evidence obtained from phones confiscated by law enforcement in a traffic stop which occurred pre-indictment. *See* Doc. # 102-1 at 4. Ms. Washington averred that she advised Mr. Davis that "the Government retrieved most of the digital evidence from his co-defendant's/co-conspirators' phones to which he did not enjoy a privacy interest so that the 4th Amendment would attach." *Id.*

Ms. Washington was correct in that "Fourth Amendment rights are personal rights," and "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." *Alderman v. United States*, 394 U.S. 165, 171-72 (1969). As such, Mr. Davis lacked the legal position to challenge the use of the aforementioned digital evidence.

The Court notes that a "conscious and informed decision on trial tactics and strategy [that] cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen

---

[4] "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient" to meet the *Strickland* standard. *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) (citations omitted). This standard alone compels denial of relief on this claim.

9

that it permeates the entire [criminal proceedings] with obvious fairness." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (quoting *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006)). Given the circumstances set forth above, Davis has neither shown that Ms. Washington's decision not to pursue suppression of the evidence constituted deficient performance nor that it prejudiced the outcome of the proceedings. As such, relief on this ground should be denied.

### *Failure to Object to Consecutive Sentences*

Mr. Davis seemingly takes issue with the imposition of consecutive sentences and believes that counsel should have objected. The Sentencing Guideline Range applicable to the crimes in this case was 168-210 months. Mr. Davis was ultimately sentenced to 168 months, which the Court notes was the low end of the Guideline Range. Claims for ineffective assistance of counsel based on failure to object to consecutive sentences will have no merit if the consecutive sentence claim has no merit. *United States v. Mudekunye*, 646 F.3d 281, 288 (5th Cir. 2011). For such a claim to have merit, the consecutive sentence must be substantively unreasonable. *Id.* When a sentence falls within the Guidelines range, as it does here, it is unlikely to be considered substantively unreasonable. *United States v. Conn*, 657 F.3d 280, 286-87 (5th Cir. 2011).

To be clear, Mr. Davis offers no substantive argument in support of this claim. Instead, he merely espouses his general dissatisfaction, in a conclusory manner, with the imposition of consecutive rather than concurrent sentences. Unsupported allegations are insufficient to establish a claim for ineffective assistance of counsel. *See Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."). Accordingly, relief on this ground is unwarranted.

**<u>Voluntariness of Plea</u>**

Mr. Davis additionally contends that his "guilty plea was not knowingly, voluntarily, and intelligently" entered. According to Mr. Davis, during his Change of Plea hearing, he "was not made aware that the government would have to have proven all the essential elements of his 924(c) charge against him." He further opines that "the court did not make him fully aware of the central elements of his crimes."

On August 25, 2023, during a Change of Plea hearing, the Court found Mr. Davis competent to enter a plea. Doc. # 101 at 4. The Court then questioned him to ensure that he understood the rights that he was abandoning by entry of his plea, and he affirmatively stated that he understood the rights that he would be giving up by entering a plea of guilty. *Id.* at 5-6. In particular, the Court inquired as follows:

> THE COURT: Have you received a copy of the indictment pending against you in this case?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you fully discussed those charges and the case in general with Ms. Washington as your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you fully satisfied with the counsel, representation, and advice given to you in this case by your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Has anyone attempted in any way to force you to plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Are you pleading guilty of your own free will because you are guilty?
>
> THE DEFENDANT: Yes, sir.

> THE COURT: Do you understand that you have the right to plead not guilty and to persist in that plea?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand that under the Constitution and the laws of the United States you're entitled to a trial by jury?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand that at trial you would be presumed innocent, and the Government would be required to prove you guilty beyond a reasonable doubt; and you would not be required to prove your innocence?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you further understand that in the course of the trial witnesses for the Government would have to come into court and testify in your presence; your attorney could cross-examine the witnesses for the Government; and she could also call other witnesses to testify on your behalf?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you aware that if you wished to testify in your own defense you would have that right to do so, but if you chose not to testify no inference or suggestion of guilty would be drawn by you so choosing?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: If you plead guilty here today, and if I accept your plea, do you understand you're going to waive your right to trial and the other rights that I just discussed with you?
>
> THE DEFENDANT: Yes, sir.

*Id.* The Court then asked Mr. Davis if he understood the nature of the charges against him, to which he answered in the affirmative. *Id.* at 7. Specifically, the Court probed as follows:

> THE COURT: What is he charged with?
>
> MS. KING: Your honor, Count 3 is what's known as stealing and unlawfully taking away from TNT Pawnshop in Booneville, Mississippi, on or about August 1, 2019. Count 7 is that, on or about August 1, 2019, he was in possession of a firearm while being and knowing he was a felon. And then Count 9 is that, after August 1, 2019, he was aided and abetted by others and did sell the stolen firearms.

12

>THE COURT: All right. Are you aware that that's what you're charged with?
>
>THE DEFENDANT: Yes, sir.

*Id.* at 6-7. The Government then read into the record the following elements it would have to prove for each of the charges:

>So the Government would have to prove, beyond a reasonable doubt, the following elements for Count 3: First, the defendant stole, took, or unlawfully carried away from the person or premises of a licensed firearms dealer, importer, or manufacturer. Second, the firearms were the licensee's business inventory. Third, that the firearms had been shipped and transported in interstate commerce. And, fourth, that the defendant did so knowingly.
>
>As to Count 7, the Government would have to prove, beyond a reasonable doubt, each of the following elements: First, the defendant knowingly possessed the firearms as charged. Second, at the time he possessed the firearms, the defendant had been previously convicted of a crime punishable by imprisonment for a term exceeding one year.
>
>Third, that the defendant knew he was a felon. Fourth, that the possession of the firearm was in or affecting interstate commerce, that is, that before the defendant possessed the firearm it had traveled at some time from one state to another.
>
>And, for Count 9, the Government would have proved, beyond a reasonable doubt, first, the defendant knowingly received, possessed, concealed, stored, bartered, sold, or disposed of the stolen firearms.
>
>Second, that the defendant knew or had reasonable cause to believe that the firearm had been stolen. And, third, that the firearm had been shipped or transported from one state or another either before or after it was stolen.

*Id.* at 7-8. The Court asked Mr. Davis whether he had any questions about those elements, to which he advised he did not. *Id.* at 8. The Court then confirmed that Mr. Davis understood the potential penalties for the underlying charges. *Id.* at 8-9. The Government went on to read the plea agreement into the record. *Id.* at 9-10. The following exchange occurred:

>THE COURT: Mr. Davis, you've heard the prosecutor state her understanding of the agreement that you entered into with the Government. Did she accurately state it as you understand it to be?

13

THE DEFENDANT: Yes, sir.

*Id.* at 10.  The Court next explained the applicability of the United States Sentencing Commission Guidelines, the guideline ranges, and the discretion the Court has to depart from the guidelines by imposing a sentence which is more or less severe than the guideline range and Mr. Davis confirmed that he understood.  *Id.* at 11-12.  The Government read into the record the facts it intended to prove should the case go to trial, and those facts, if proven beyond a reasonable doubt, would have led to a conviction.  *Id.* at 12-14.  Following this colloquy, Mr. Davis entered a plea of guilty to Counts Three, Seven, and Nine of the indictment.  *Id.*

As thoroughly set forth above, Mr. Davis was *fully* informed of the essential elements of the charges to which he pled guilty.  Thus, the Court finds his claim that his plea was not "knowingly, voluntarily, and intelligently" entered contrary to the record and, consequently, wholly without merit.  Relief on this ground is, therefore, inappropriate.

## Certificate of Appealability

When considering a § 2255 motion, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Mr. Davis must obtain a COA before he may appeal the denial of her § 2255 motion.  28 U.S.C. § 2253(c)(1)(B).  A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to COA determination in a § 2255 proceeding).  To obtain a COA on a claim that has been rejected on procedural grounds, a movant

must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Based on the *Slack* criteria, the Court finds that a COA should not issue in this cause.

## Conclusion

For the reasons set forth herein, Mr. Davis' motions [94],[103] to vacate, set aside, or correct his sentence pursuant 28 U.S.C. § 2255 are **DENIED**, and a COA from the denial of his § 2255 motions is **DENIED**. A separate final judgment consistent with this memorandum opinion and order will enter today.

**SO ORDERED**, this the 8th day of January, 2025.

/s/Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**